## THE STATE v. SNELL, *Appellant.*

1. **Murder:** indictment.   An indictment for murder examined and
*Held* to contain sufficient averments, (1) That the assault, stabbing
and wounding were done feloniously, willfully, etc.; (2) That de-
ceased, after being wounded by defendant, "languished till Sep-
tember 29th, 1881, and then and there died" from the effects of the
wound.

2. ——: ——.   In an indictment for murder an allegation that the
wound was mortal and caused the death is sufficient; it is not nec-
essary to describe it so as to show that it was of a character likely
to produce death.

3. ——: "feloniously."   An erroneous definition of the word "felo-
niously," *Held* not to be reversible error in this case, it being ap-
parent that the defendant could not have been prejudiced by the
error.

4. ———: "PREMEDITATION." The definition of "premeditation" as "thought of beforehand for any length of time however short," adhered to.

5. ———: "DELIBERATION." An incorrect definition of "deliberation," *Held*, not to be reversible error, the defendant not having been convicted of murder in the first degree.

6. ———: INSTRUCTION: DRUNKENNESS. An instruction that drunkenness is no excuse for crime, although there was no occasion for giving it, the defense not having been based upon the defendant's intoxication, *Held*, not to be reversible error, as it could not possibly have prejudiced the defendant.

7. ———: MANSLAUGHTER. Where the evidence shows that the offense was either murder of the first or second degree, it is not error to refuse instructions as to manslaughter.

8. ———: RES GESTAE. Declarations of the parties to a conflict made after it is over and they have been separated, are not part of the *res gestae.*

*Appeal from Clinton Circuit Court.*—HON. GEO. W. DUNN, Judge.

AFFIRMED.

*Woodson, Porter & Hughes* for appellant.

*D. H. McIntyre,* Attorney General, and *James W. Coburn,* for the State.

HENRY, J.—At the September term, 1881, of the circuit court of Platte county, the defendant was indicted for the murder of Stephen T. Newman. On his application a change of venue was awarded, and the cause sent to the circuit court of Clinton county, and at the March term, 1882, of said court, he was tried and found guilty of murder in the second degree, and his punishment assessed at twenty years' imprisonment in the penitentiary, and he has prosecuted his appeal from the judgment.

Several objections are made to the indictment: 1st, That it does not charge the wounding " to have been done

1. MURDER: indictment. feloniously, willfully, deliberately, premeditatedly and of malice aforethought." It

16—78

alleges that: "with a certain knife, * * which he, the said Clay Snell, in his right hand then and there had and held, him the said Stephen T. Newman feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did strike, stab and thrust in and upon the body, giving to the said Stephen T. Newman then and there with the knife aforesaid, in and upon the body of him, the said Stephen T. Newman, one mortal wound." The stabbing was alleged to have been done feloniously, willfully, etc., and the wounding was the immediate result of the stabbing, and this was a sufficient allegation that the assault, stabbing and wounding were done "feloniously," etc.

2nd, It is contended that it is not alleged that "deceased was wounded on the 2nd day of September, 1881, and languished until the 29th day of September, 1881, and then and there died from the effects of the wound." The language of the indictment is as follows: · "Of which mortal wound, the said Stephen T. Newman, from said 2nd day of September, 1881, until the 29th day of September, 1881, at the county aforesaid, did languish, and languishing did live, on which 29th day of September the said Stephen T. Newman, in the ·county aforesaid, of the mortal wound aforesaid, did die." From this it will be perceived that the objection is unfounded.

Another objection is, that the wound is not so described as to show that it was of a character likely to produce death. 2. ——: ——. It is not necessary that it should. Describing it by its length, width and depth, would not necessarily show that it was a mortal wound. It is sufficient to allege that it was a mortal wound, and caused the death of the party.

The second instruction for the State defined the word "feloniously" to mean "wrongfully, without just cause or excuse, not accidentally." The definition 3. ——. "feloniously." of the word is certainly incorrect, but there was no necessity for defining it. It is employed to classify offenses, but is not a distinct element of a crime. If the

facts proved establish a felony, then the crime was committed feloniously—if they establish a misdemeanor, the offense was not feloniously committed. A correct definition of the word could not have aided the jury in their deliberations, nor could the incorrect definition, in this instance, possibly have prejudiced the defendant's case, or been an obstacle in the way of the jury to a proper verdict on the law and the facts.

It is also insisted that the court erred in defining pre-meditation to be "thought of beforehand, for any length of time, however short." That definition has too often and too long had the sanction of this court, to be modified or repudiated now.

The definition of deliberation in the instruction is not correct, but the defendant was not convicted of murder in the first degree, and the jury gave him the benefit of the law, to the same extent as if the court had declared it, by finding that there was such heat of passion, other than technical heat of passion, as under the decisions of this court, reduce a homicide from murder of the first degree, to the second degree of that crime, and therefore, the error complained of will not warrant a reversal of the judgment.

By the eighth instruction for the State the jury were told that: "Drunkenness is no excuse for crime." There was evidence tending to prove that defendant was drunk when he stabbed Newman, but the court might well have omitted the instruction. It was a correct declaration of an abstract proposition of law, but as the defense was not based upon the intoxication of the defendant, there was no occasion for giving an instruction on that subject. It is no ground for reversal, that the court burthened the record with an instruction announcing a mere abstract principle of law, unless it may possibly have prejudiced defendant. As a general rule, it is error to give an instruction not based upon competent evidence or an issue in the cause. This, however, is because it might

have misled the jury into the belief that there was evidence
upon which it was based, and that it may have influenced
their verdict.  But here it was wholly immaterial whether
defendant was drunk or sober.  If the jury found either
that he was drunk or sober, they could have found him
guilty of no higher crime than murder in the first degree,
and, under the instructions, whether he was drunk or sober,
he could not have been found guilty of a less offense than
that of which he was convicted, murder in the second de-
gree.  They could not have found him guilty of any crime
solely because he was drunk, and of the instruction of the
court that drunkenness was no excuse for crime.  By that
instruction they were told in substance, and they could not
possibly have misunderstood it, that although defendant
may have been drunk when he stabbed Newman, they
should try the cause as if he had been sober.

The court did not err in refusing to instruct as to man-
slaughter of any degree.  The evidence clearly shows that
7. ——: manslaugh-   defendant repeatedly sought a difficulty
ter.          with deceased on the day the homicide oc-
curred, and that deceased endeavored to avoid it; that after
angry words had passed between them, defendant was led
away, but in a short time returned, with an open knife in
his right hand, to the gallery in which deceased was shoot-
ing at a target, and, approaching him, slapped him in the
face with his left hand; that deceased kicked him, or kicked
at him, and thereupon defendant stabbed him inflicting the
wound of which Newman died.  The offense was either
murder of the first or second degree.  There might be some
question whether the one or the other; but a careful exam-
ination of the testimony has led us to the conclusion that
if he would not rather have been hanged than imprisoned
in the penitentiary, defendant has reason to be thankful
that he escaped the gallows.

The court properly excluded evidence of a declaration
made by Newman after he was stabbed:  "That it was well
8. ——: res gestae.   for defendant that his, Newman's, gun was

caught before he got stabbed, because, if it had not been caught, he would have killed defendant." It was no part of the *res gestae*, nor was it admissible as a dying declaration. *State v. Curtis*, 70 Mo. 597. It was made not while the parties were engaged in the conflict, but after it had terminated and they had separated.

The judgment is affirmed. · All concur.