# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI,

AT THE

APRIL TERM, 1893.

*(Continued from Volume 115.)*

## THE STATE v. SANSONE, *Appellant.*

### Division Two, May 16, 1893.

1. **Criminal Practice**: IMPANELING JURY: STATUTE. Under the act of April 1, 1891, providing that in counties having a population of over fifty thousand and less than three hundred thousand inhabitants, where a jury cannot be made up from the regular panel the trial judge may deliver to the proper officer a list of jurors sufficient to complete the panel, is substantially complied with when the judge of the criminal court by his written order directs the marshal to summon twenty-five duly qualified jurors to appear in court to complete the panel, and then makes inquiry as to their names, places of residence and business, and having satisfied himself in that regard then makes the list and requires the marshal to summon them.

2. ———: ———: WAIVER. Objection that a jury has not been legally summoned and impaneled in a criminal cause comes too late if made for the first time in the motion for a new trial.

3. ———: SEPARATION OF JURORS. Where a juror, during the progress of a criminal trial, is permitted to separate from the others for a short time and to visit his home in charge of an officer, the state may show he was not subjected to any undue influence and thereby rebut the presumption arising from the separation.

VOL. 116—1 (1)

The State v. Sansone.

4. ——: MURDER: INSTRUCTIONS: HARMLESS ERROR. One convicted of murder in the *second* degree cannot complain that the court committed error in giving an instruction on murder in the *first* degree.

5. ——: MANSLAUGHTER: OPPROBRIOUS EPITHETS. The application of opprobious epithets to defendant by the deceased was not such a provocation as to reduce the killing from murder to manslaughter.

6. ——: GOOD CHARACTER: INSTRUCTION. An instruction in a criminal trial relative to the weight to be given to evidence of good character approved.

7. ——: MURDER: PRIOR DIFFICULTY: EVIDENCE. In a trial for murder it is proper for the defendant's counsel to inquire of a witness what the deceased had said to. witness about a difficulty the former had had with defendant shortly preceding the homicide.

8. ——: ——: ——: HARMLESS ERROR. Error cannot be founded on the exclusion of the answer to such question where the witness is subsequently permitted to answer substantially the same one without objection.

9. Criminal Practice: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. Courts are reluctant to grant new trials on the ground of newly discovered evidence.

10. ——: ——: ——. Where the sole purpose such new evidence would subserve would be to impeach the credit of a witness and it appears from counter affidavits it would not change the result of the trial, the motion for a new trial is rightly overruled.

*Appeal from Jackson Circuit Court.*—GEORGE L. WALLS, Esq., Special Judge.

AFFIRMED.

*C. H. Nearing* and *Boland & O' Grady* for appellant.

(1) The method employed in the selection of twenty-five additional jurors to complete the panel of forty-seven was contrary to act approved April 1, 1891, and illegal, and their verdict should be set aside and the case remanded for a new trial. Acts 1891, p. 173. (2) The court erred in permitting the juror, Martin Gossett, after the jury had been sworn, and during the progress of the trial, to separate from his fellow jurors for the

space of one hour, in the charge of an officer not sworn to take charge of such juror or the jury, and the presumption that defendant was thereby prejudiced has not been overcome by the affidavits filed by the state. (3) There was no evidence upon which to predicate an instruction for murder in the first degree, and instruction number two, given for the state, ought not to have been given. *State v. Riley,* 100 Mo. 493. There was no evidence of premeditation on the part of defendant. The testimony of all the witnesses, for both the state and the defendant, shows that at and immediately prior to the time of the homicide, opprobious epithets were passed between deceased and defendant and that the act of defendant was done at once. This, of itself, makes the offense, if any, murder in the second degree or a lesser offense, according to the attending circumstances. *State v. Bulling,* 95 Mo. 221; *State v. Holme,* 54 Mo. 161; *State v. Foster,* 61 Mo. 553; *State v. Wieners,* 66 Mo. 25; *State v. Robinson,* 73 Mo. 308; *State v. Anderson,* 98 Mo. 472. (4) The state's instruction number eleven on the law of self-defense requires the jury to find that the facts which caused defendant's reasonable apprehension "have been established by the evidence in the case" before they can acquit. That is tantamount to an instruction that such facts must be proved by a preponderance of the evidence, which would have been improper. The presumption of innocence attends the defendant throughout the trial, and unless the evidence for the state repelled defendant's evidence of self-defense beyond a reasonable doubt, the jury should acquit, and they should have been so instructed. *State v. Hickman,* 95 Mo. 329; *State v. Hill,* 69 Mo. 453: *State v. Wingo,* 66 Mo. 181; *State v. Alexander,* 66 Mo. 158. (5) The court should have instructed the jury for manslaughter. There was evidence of previous threats made by deceased against

the life of defendant, communicated to the defendant; that deceased, immediately before the homicide, directed opprobrious epithets, toward the defendant; that deceased ̖caught defendant by his vest, and was in the act of drawing a pistol when defendant shot him. *State v. Ode*, 73 Mo. 288; *State v. Starr*, 38 Mo. 277; *State v. Gilmore*, 95 Mo. 554; *State v. Branstetter*, 65 Mo. 154; *State v. Edwards*, 70 Mo. 483; *State v. Dunn*, 80 Mo. 689; *State v. Woods*, 97 Mo. 32; *State v. Wilson*, 98 Mo. 449; *State v. Talmage*, 107 Mo. 543. (6) While no instructions for manslaughter were asked by defendant, yet it was the duty of the court to instruct the jury on all grades of homicide which the evidence tended to prove, whether asked or not. *State v. Henson*, 106 Mo. 70; *State v. Turlington*, 102 Mo. 662; *State v. Palmer*, 88 Mo. 568; *State v. Branstetter*, 65 Mo. 154; *State v. Kilgore*, 70 Mo. 558; *State v. Johnson*, 76 Mo. 127; *State v. Dunn*, 80 Mo. 689. (7) The court erred in its rulings on the evidence. (8) The court also erred in not granting a new trial on the ground of newly discovered evidence. *State v. Murray*, 91 Mo. 103.

*R. F. Walker*, Attorney General, and *Marcy K. Brown*, Prosecuting Attorney, for the state.

(1) The statutory method of summoning, drawing and empaneling jurors is directory and not mandatory, and even though the manner of their selection be irregular, or highly objectionable, yet the verdict will not be set aside where there is no charge that defendant was prejudiced thereby. *State v. Pitts*, 58 Mo. 556; *State v. Jones*, 61 Mo. 232; *State v. Breen*, 59 Mo. 415; *State v. Ward*, 74 Mo. 256; *State v. Knight*, 61 Mo. 373; *State v. Matthews*, 88 Mo. 123. Even if objection be taken in time, such objection will be disregarded

unless it appears that defendant has suffered some prejudice. *State v. Collins*, 86 Mo. 250. (2) The defendant made no objection to the manner of selecting extra jurors at the time, nor until after verdict, in his motion for new trial. It is too late after the verdict to object to the panel of jurors or the manner of its selection. *State v. Ward*, 74 Mo. 256; *State v. Collins*, *supra; State v. Gilmore*, 95 Mo. 554. (3) A mere temporary separation of a juror from his fellow-jurors, where he is subjected to no improper influences, is no ground for a new trial, unless it further appears that he has been tampered with, or has been guilty of improper conduct. *State v. Payton*, 90 Mo. 229; *State v. Carlisle*, 57 Mo. 102; *State v. Bell*, 70 Mo. 634; *State v. Collins*, 86 Mo. 245; *State v. Washburn*, 91 Mo. 573. (4) There was evidence of deliberation and the jury was rightly instructed on murder in first degree, but defendant, not having been convicted of that charge, cannot complain of any supposed error in that regard. *State v. Fritterer*, 65 Mo. 424; *State v. Snell*, 78 Mo. 243; *State v. Wilson*, 98 Mo. 445. (5) No instructions on manslaughter were called for by the evidence, and none should have been given. *State v. Talbott*, 73 Mo. 347; *State v. Wilson*, 88 Mo. 19; *State v. Herrell*, 97 Mo. 107; *State v. Turlington*, 102 Mo. 660. (6) Instruction number eight, given for the state, touching the evidence as to the previous good character of defendant, concerning which defendant objects, is in the exact language of similar instructions repcatdly approved by this court. *State v. Pagels*, 92 Mo. *loc. cit.* 316; *State v. Brooks*, 92 Mo. *loc. cit.* 556; *State v. Moxley*, 102 Mo. 374; *State v. Jones*, 78 Mo. 278; *State v. Vansant*, 80 Mo. 67. (7) The tenth instruction given for the state, touching the flight of defendant, is not in any sense a comment upon the evidence, as claimed by defendant, but is in the exact language

repeatedly approved by this court where flight of defendant is shown by the state. *State v. Brooks*, 92 Mo. 556; *State v. Walker*, 98 Mo. 108; *State v. Gee*, 85 Mo. 651; *State v. Moore*, 101 Mo. 324; *State v. Hays*, 78 Mo. 310; *State v. Griffen*, 87 Mo. 613; *State v. Smith*, 114 Mo. 406. (8) A witness can not be interrogated on a subject not pertinent to the issues involved, for the mere purpose of contradicting or impeaching him. *Harper v. Railroad*, 47 Mo. 568; *Bank v. Murdock*, 62 Mo. 70; *Lohart v. Buchanan*, 50 Mo. 201; Greenleaf on Evidence, sec. 462; Rapalje on Witnesses, sec. 209, and cases cited. (9) The alleged newly discovered evidence presented by defendant fails in every respect to meet any of the six requirements fixed by the decisions for such evidence. It is not material, is but cumulative, and could not possibly have produced any different result. No proper diligence is shown, and its effect, even if true, would be but to impeach the credit of one of the state's witnesses. *State v. Ray*, 53 Mo. 345; *State v. Woodward*, 95 Mo. 131; *State v. Crawford*, 99 Mo. 80; *State v. Musick*, 101 Mo. 274; *Cook v. Railroad*, 56 Mo. 380; *Snyder v. Burnham*, 77 Mo. 52; *State v. Smith*, 114 Mo. 406; *State v. Welsor* 21 S. W. Rep. (Mo.) 443.

GANTT, P. J.—The defendant was indicted at the January term, 1892, of the criminal court of Jackson county, for the murder of Joseph Marichirina, on the twenty-seventh day of December, 1891. He was duly arraigned and his plea of "not guilty" entered. He was tried at the same term and convicted of murder in the second degree. A motion for new trial was filed and continued to the April term, and was finally overruled July 19, 1892, and the defendant sentenced to the penitentiary for ninety-nine years.

At the time of the sentence the court stayed the execution of the sentence until July 29, 1892, to enable defendant to file a bill of exceptions.

On the twentieth day of July, 1892, and after having overruled the motion for new trial and sentenced defendant, the HON. HENRY P. WHITE, the judge of said criminal court, died, without having had a bill of exceptions presented to him by defendant for his approval. The term was kept alive by adjournment by the officers of the court, from day to day, for three days, as provided by statute, when the governor appointed HON. JOHN W. WOFFORD judge of the court to fill the vacancy so occasioned by the death of Judge WHITE.

Judge WOFFORD, having been of counsel for defendant, was, of course, incompetent to pass upon his own bill of exceptions. Upon the application of the defendant to this court, we awarded him a writ of *mandamus* to said criminal court to cause an election to be held for a special judge to settle and approve his bill of exceptions and grant his appeal. *State ex rel. Sansone v. Wofford*, 111 Mo. 526. Thereafter GEORGE L. WALLS was elected special judge and settled, signed and certified the bill of exceptions, presented by defendant, and the cause is here on his appeal, thus perfected.

On Sunday, December 27, 1891, the defendant, Antony Sansone, the deceased, Joseph Marichirina, and a cousin of the deceased, Antone Marichirina, all Italians, met at Anton Citzo's saloon on Third street in Kansas City, Missouri, about ten o'clock in the forenoon. After drinking together, they went to Basili's saloon at Grand avenue and First street, where they ate lunch and drank wine. They remained at this saloon about one hour.

They went to Nuccio's saloon on Third and Locust streets. During all the time they appeared friendly.

While in Nuccio's saloon they drank and smoked and chatted with the crowd that was gathered there, some of whom where playing cards and others looking on. The defendant left the room for a short time. Upon his return he proposed that the three should go, but the deceased demurred, and said he wanted to stay there. Thereupon the defendant took him by the coat and pulled him toward the door but all the witnesses thought it was a friendly act, until they reached the door. When they reached the door the defendant was in front, the deceased a step or so behind him and Antone Marichirina close behind deceased.

When deceased declined to go with defendant, defendant applied to deceased the Italian epithet, "Skifosa," which was translated by the interpreters in the case to mean, "contemptible, mean, disgusting, low," and vulgarly, a *"stinker."* When they reached the door defendant was heard to repeat to deceased this expression: "You are a skifosa," to which deceased retorted, *"If I am a skifosa you are a skifosa. I am not afraid of you or Christ."* Immediately after saying this, and as they were ascending the three steps which lead up from the floor of the saloon to the level of the sidewalk, defendant having reached the top step, deceased having one foot on the floor and the other on the first or lower step, and his cousin following four feet to the rear, defendant turned, and aiming a revolver at deceased, shot him through the head, producing the wound of which he died that evening.

The evidence tends strongly to show there were three shots fired. Anton Marichirina fired one at defendant after he shot the deceased, his cousin, but did not hit him. The crowd in the saloon ran at the first shot, and the evidence of the bystanders is not very consistent after the revolver was exhibited by the defendant.

The State v. Sansone.

There was evidence tending to show on the part of defendant that some days prior to the killing deceased had verbally guaranteed the payment of $100 defendant had loaned another Italian, and when reminded of this promise, deceased had denied the promise, and called defendant "a d—n liar," and attempted to draw his pistol but was prevented by his friends; that after this he had threatened defendant and the threat was communicated to defendant, but it did not seem to annoy him much.

There was also evidence that a revolver was found near deceased's body and was taken away by his cousin. On this point the evidence was extremely contradictory, the state's witnesses denying that defendant's witnesses were present in the saloon at the time they claimed to have seen the pistol on the floor by the body of the deceased. There was also evidence impeaching the moral character of one of defendant's witnesses.

The court instructed on murder in the first and second degree and self defense. The other facts will sufficiently appear in the discussion of the errors assigned by defendant.

I. The first assignment of errors relates to the impaneling of the jury. An inspection of the record discloses that it was necessary to summon twenty-five additional jurors after the list of jurors drawn by the county court had been exhausted, to make out the panel of qualified jurors, from which the jury of twelve should be selected.

By section six (6) of the act, prescribing the "qualification of petit jurors" approved April 1st, 1891, in counties having over fifty thousand inhabitants and less than three hundred thousand inhabitants, "When a jury for the trial of the cause cannot be made up from the regular panel, the judge of the court before

whom the cause is pending may make out and deliver to the proper officer a list of jurors sufficient to complete the panel, but such extra jurors shall be summoned only for the trial of that particular cause." Laws 1891, sec. 6, p. 173.

It appears that in this cause, for his own convenience in the first instance, the judge of the criminal court by his written order required the marshal to summon twenty-five duly qualified jurors to appear in his court for the completion of the panel in this cause. The record recites that after these extra jurors came the judge in open court fully inquired into their names, places of residence, and business and having satisfied himself, then ordered the marshal to summon them. The list of jurors was then reduced to writing and the order containing their names signed by the judge, and the return of the marshal thereon, showing that he summoned them upon the order of the judge, was filed.

The only possible objection to this method that can be urged, is, that the judge did not in the first instance make out this list from his own memory, but it will be observed that the statute nowhere undertakes to prescribe how the judge shall acquire the information upon which he makes his order for the additional jurors, and in this case, he simply used the chief executive officer of the court to bring into his presence these citizens. In all other counties in the state outside of these large cities, this duty is devolved entirely upon the sheriff, but in this case the court simply availed itself of the acquaintance of the marshal in the first instance, and was free to reject any and all of those he summoned. They were not finally summoned until the judge had satisfied himself of their character and qualifications.

The method pursued was a substantial compliance with the law and inasmuch as there is not the slightest

suggestion that the officer who summoned them was guilty of any improper conduct, or that any one of the additional jurors was not a competent juror, we think the course pursued by the judge affords no ground whatever for complaint. The able counsel who defended the cause made no objection to this method at the time but the record recites that, *"afterward in his motion for new trial he excepted* to the action of the court in thus summoning the extra jurors." This has been uniformly ruled to be *too late. State v. Waters*, 62 Mo. 197; *State v. Klinger*, 46 Mo. 224; *State v. Gilmore*, 95 Mo. 554; *State v. Smith*, 114 Mo. 406.

II. The next assignment charges an unlawful separation of the jury. As to the ground of exception these facts are disclosed. Martin Gossett was one of the extra jurors summoned to complete the panel. After he was finally selected as one of the jurors, and at the close of the evidence on the first day, in the presence of counsel for the defendants and defendant himself, and the prosecuting attorney, the juror stated to the court that he left home that morning fully expecting to return; that he had a sick child about ten years old, about whom he was exceedingly anxious and that his wife was of a very nervous temperament, and under the circumstances he asked permission to be taken in the charge of an officer to see his child and explain to his wife his absence so as to allay her fears. At this point, Judge WOFFORD, counsel for defendant, stated to the court he had no objections to the juror going to see his family. This appears by his affidavit in the record. The other affidavits go further and say they understood him as even requesting it and agreeing to waive all exceptions on this account. At first the judge was inclined to refuse the request but finally consented, and calling Edward O'Flaherty, whom the record shows was one of the marshal's deputies duly sworn at the

commencement of the term, placed the juror in his charge, and instructed the said deputy and the juror to permit no one to communicate with said juror about this cause or any matter connected therewith.

It further appears that the officer and juror went directly to the juror's home; that he remained all the time in the officer's presence; that counting all the time going and returning, they were gone less than an hour; that it took about twenty-two minutes to go and the same time to return, and he was only at home about fifteen minutes. So that it affirmatively appears on the part of the state, without contradiction by defendant, that this juror was not subjected at any time to any improper influences. This being so, the presumption arising from the separation is fully rebutted. *State v. Orrick*, 106 Mo. 128; *State v. Avery*, 113 Mo. 475; *State v. Steifel*, 106 Mo. 129; *State v. Payton*, 90 Mo. 220; *State v. Collins*, 86 Mo. 250.

III. As already noted, the court instructed for murder in the first degree, murder in the second degree and self-defense.

The first objection made by defendant to the instructions is, that the court erred in giving an instruction for murder in the first degree, but as he was virtually acquitted of that offense by the verdict of guilty in the second degree, the supposed error cannot injure or prejudice him and it certainly constitutes no ground for reversal. *State v. Fritterer*, 65 Mo. 424; *State v. Snell*, 78 Mo. 243; *State v. Wilson*, 98 Mo. 445.

IV. The court correctly defined murder in the second degree and the learned counsel for defendant concedes that there was evidence justifying the submission of that degree to the jury. There was no evidence of any lawful provocation which would have authorized the court to instruct the jury on man-

slaughter.   The opprobrius epithet was the only pro-
vocation given and this has been repeatedly held
insufficient to justify the court in reducing the homicide
to manslaughter.   *State v. Bulling*, 105 Mo. 204.

V. The eighth instruction, touching the weight
to be given to evidence of good character, has often
met the approval of this court.   *State v. Pagels*, 92
Mo. 316; *State v. Moxley*, 102 Mo. 374.

VI. The tenth instruction was in no sense a com-
ment on the evidence.   No presumption of guilt was
drawn from the fact that defendant absented himself
from his abode for several days after the shooting, but
it was a fact the jury were authorized to consider along
with the fact that he voluntarily surrendered himself.

VII. The court gave the defendant the full benefit
in its instructions of the right of self-defense, and it
committed no error in refusing other instructions on
that subject, though technically correct, and the same
is true as to the other refused instructions; they were
either a repetition of those already given or were not
supported by the evidence.

VIII. It is made a ground for new trial, that the
court improperly refused to permit the witness Joseph
Damico to answer a question by the counsel of defend-
ant as to what deceased had said to him about a diffi-
culty he had with defendant at the crossing of Grand
avenue and Second street.   The question was proper
and but for the fact that the court permitted the same
question in substance to be asked, and answered
without objection, he might reasonably complain, but
as it is evident that he had the full benefit of the state-
ment, he has no cause for complaint.

Neither do we find any reversible error in exclud-
ing the answer of the witness Nuccio.   Defendant was
allowed the utmost freedom in his cross-examination
of this witness as to every material fact involved, and

the purpose of the inquiry was not shown to the court when the answer was rejected. It is now claimed, it was for impeachment. If so the offer should have been made fairly for that purpose. Standing alone it is not reversible error. *Aull Savings Bank v. Aull*, 80 Mo. 199; *Armstrong v. Farrar*, 8 Mo. 627; *Jackson v. Hardin*, 83 Mo. *loc. cit.* 187.

IX. The remaining ground for a new trial, is newly discovered evidence. The new evidence is incorporated in the joint affidavit of Joseph Matchia, Vichinco Sacro, Walter Radisso and Litichia Laxoco, in which they say that after the trial in this cause, they had a conversation with Vattasta Nuccio, one of the state's witnesses, in which he said, contrary to his testimony in the cause, that he did not see the shooting, and was not noticing defendant and deceased until he heard the first shot and as soon as he heard that he jumped and ran out of the saloon. The state filed Nuccio's affidavit denying their statement in detail and generally.

Two other affiants, Cordello and Mangarigena, depose that they have lived in Kansas City five years and are acquainted with nearly all their countrymen, in said city, and they do not know the affiants Matchia, Sacro *et al;* that they have made diligent inquiries among their countrymen, and cannot find any such men, and that their names do not appear in any city directory of Kansas City.

The court very properly overruled the motion on such a showing as this. The sole purpose this evidence could subserve, would be to impeach the credit of Nuccio, and it is utterly incredible in view of the counter-affidavits, that this evidence could produce any material change of itself in the verdict.

The rule so clearly announced in *Berry v. State*, 10 Ga. 527, was adopted in this state as early as *State v.*

The State ex rel. Allen v. The Kansas City, St. J. & C. B. Ry. Co.

*McLaughlin,* 27 Mo. 111, and we know of no departure from it. Courts are always reluctant to grant new trials on this ground, for evident reasons.

We find no reversible error in this record, and the judgment is accordingly affirmed. SHERWOOD and BURGESS, JJ., concur.