# THE STATE v. SPRAY, Appellant.

### Division Two, May 19, 1903.

1. **Robbery: "FELONIOUS" IN INSTRUCTION.** An instruction on robbery which fully and correctly states all the elements of robbery, is not error because it fails to state the property was taken and carried away "with fraudulent and felonious intent." The word "felonious" or "feloniously" or "fraudulently" is not entitled to any place in the instruction.

2. ————:**EVIDENCE OF OTHER ROBBERIES.** Evidence of another separate and distinct robbery committed by the same defendant upon another person in the same neighborhood but six or seven blocks distant, in much the same way, and of the same kind of goods, and about the same time, is not admissible in evidence against one who is being tried for robbing a pedestrian on a street in a city about midnight, by holding a pistol in his face. Such is not an exception to the rule that evidence of matters other than those charged in the indictment are inadmissible. It is only when the testimony as to the separate offense will have some tendency to prove the charge laid in the indictment that it is admissible; it must, therefore, have some logical connection with the crime charged.

3. ————: ————: **INTENT.** Proof of another robbery is not admissible in a robbery case for the purpose of showing intent. The facts constituting the offense are sufficient evidence of intent in larceny cases. The act itself carries the intent with it.

4. ————: ————: **CORROBORATION.** The fact that defendant committed another robbery very near the same time does not tend to prove that he committed the robbery for which he is being tried. Evidence of that crime is not, therefore, admissible in evidence as corroboration.

Appeal from St. Louis City Circuit Court.—*Hon.
Walter B. Douglas,* Judge.

REVERSED AND REMANDED.

*John A. Gernez* for appellant.

(1) The entire testimony of Arthur Damschroeder should have been excluded as incompetent, immaterial

and irrelevant, and for the reason that evidence of another offense by the defendant in this cause was entirely improper.     State v. Goetz, 34 Mo. 85; State v. Reavis, 71 Mo. 419; State v. Reed, 85 Mo. 194; State v. Burlingame, 146 Mo. 207; State v. Harold, 38 Mo. 496; State v. Fierline, 18 Mo. 381; State v. Daubert, 42 Mo. 242; State v. Greenwade, 72 Mo. 298; People v. Molineux, 61 N. E. 286; People v. Ware, 1 N. Y. Cr. 166; People v. Mead, 50 Mich. 228; State v. Clover, 31 Ohio St. 102; People v. Greenwall, 108 N. Y. 296; People v. Jones, 31 Cal. 565.     (2) Instruction number one is erroneous in failing to properly define robbery.     It fails to define one of the constituents of robbery, i. e., larceny, properly, in that the instruction fails to state that the stolen property was taken and carried away with fraudulent and felonious intent.     State v. Rutherford, 152 Mo. 124; State v. Lackland, 136 Mo. 26; State v. Casteel, 53 Mo. 124; State v. Ware, 62 Mo. 597.

*Edward C. Crow,* Attorney-General, *Sam B. Jeffries,* Assistant Attorney-General, and *Jerry M. Jeffries* for the State.

(1)     Arthur Damschroeder testified over defendant's objection that defendant held him up and robbed him at the same place and about the same time that the prosecuting witness was held up and robbed by defendant.     The court instructed the jury upon the purposes and objects of this testimony and how they should consider it.     The evidence was competent, especially so since the defense interposed an alibi.     This was so intimately connected with the crime charged as to make it a part of the very transaction and to identify the defendant as an actor therein.     Hence, it was admissible. State v. Matthews, 98 Mo. 125; State v. Sanders, 36 Mo. 35; State v. Beaucleigh, 92 Mo. 490.     Improper evidence showing defendant guilty of other independent crimes is not ground for reversal where the evidence clearly shows him guilty of the crime charged.     State v. Owen,

78 Mo. 637; State v. Emery, 76 Mo. 348. (2) The instructions conform to the well-established rules of law, and are not objectionable. State v. McLain, 159 Mo. 347; State v. Broderick, 59 Mo. 319. In a criminal case, if the court fails to instruct on all questions of law, exceptions must be saved at the time, and the point can not be raised for the first time in the motion for a new trial. State v. Sacre, 141 Mo. 64; State v. Lamb, 141 Mo. 298; State v. Barton, 142 Mo. 450.

FOX, J.—The indictment in this case was returned into court May 9, 1902, and by it the defendant is charged with being an habitual criminal, and with robbery. On trial he was found guilty of robbery and his punishment fixed at fifteen years' imprisonment in the penitentiary. After an unsuccessful motion for a new trial he has appealed to this court.

On the night of March 26th, at about ten o'clock in the evening, George A. Mellies, a practicing physician in St. Louis, Missouri, was held up and robbed of forty-nine dollars in money, a gold-filled watch, and a bunch of keys; the watch was worth about twenty-five dollars.

The doctor tells the story of the robbery as follows: "As I was nearing the corner of Seventeenth, that is, as I came to the corner of Sevententh and Madison streets, that is, the northwest corner, a man stepped up in front of me as I came to the corner of the pavement where Madison street and Seventeenth street meet, and when I saw the man was standing in front of me I looked up and with that I saw a revolver presented to my face and he said, 'Throw up your hands;' with that I said, 'What do you mean?' and stepped back a step; and he said, 'I mean business; no monkeying, I want what you have; if you make any move I will blow your brains out,' and with that he changed his revolver from his right hand to his left and proceeded to go through my pockets, take out my money I had in my pocketbook, and then took the money I had in my vest pocket, and then

the watch, and then went in the other pocket and took the bunch of keys; after he had done that he says, 'Now don't you follow me.' I walked over Seventeenth street to Cass and telephoned down to the police station in regard to the matter.''

That night about twelve o'clock two police officers arrested defendant at his home. He was taken to the police station, where he was identified by the prosecuting witness.

Notwithstanding the objection and exception of counsel for defendant, the court permitted witness Arthur Damschroeder to testify not only as to seeing the defendant some five, six or seven blocks from the place of the commission of the offense charged, but also that defendant assaulted and robbed him. The witness fixes the time of this second robbery within a few minutes of the time fixed by the prosecuting witness as to the first offense.

Police officers were also introduced, testifying as to conversations with defendant in respect to the robbery, and the identification of defendant, as made by the prosecuting witness.

Numerous witnesses were introduced by defendant, tending to establish the defense of an alibi.

We will omit from this statement the testimony upon the charge, as contained in the indictment, of being an habitual criminal, as the jury failed to find the defendant guilty of that charge.

The jury returned a verdict of guilty as to the charge of robbery, and fixed the defendant's punishment at imprisonment in the penitentiary for fifteen years. From this judgment of conviction he brings this cause to this court for review by appeal. As the defendant was only convicted of the charge of robbery as contained in the indictment, there is no necessity of discussing the errors complained of, which are alone applicable to the charge of being an habitual criminal.

The errors complained of in respect to the offense of which defendant was convicted, are:

First. That instruction number 1, as given by the court, is erroneous in its failure to properly define robbery and larceny.

Second. That instruction number 2 was not warranted.

Third. That instruction number 8 was not authorized, because based upon incompetent testimony.

Fourth. That the court erred in the admission of the testimony of witness Arthur Damschroeder, as to the commission of a separate and independent offense.

Instruction number 1 of which appellant complains, is as follows:

"If upon consideration of all the evidence in the light of these instructions you believe and find from the evidence, that at the city of St. Louis and State of Missouri, on or about the 26th day of March, 1902, or at any time within three years next before the finding of the indictment herein, the defendant, Joseph Spray, did assault the prosecuting witness, George A. Mellies, and by violence to his person, or by putting him in fear of immediate injury to his person, did, against his will, take from his person one bunch of keys, one gold-filled watch, one fob, and forty-nine dollars in money, or some part of said property or money, with the intent at the time to wrongfully take and carry away and to fraudulently convert the same to his own use and permanently deprive the owner thereof, without his consent, and that the property so taken was the property of said George A. Mellies and was of any value, then you should find the defendant guilty of robbery in the first degree, as charged in the indictment."

The complaint urged against this instruction is that it "fails to state the property was taken and carried away with fraudulent and felonious intent." This same complaint has been frequently urged in this court.

In the case of State v. Scott, 109 Mo. 226, it is clearly announced that the word "felonious" is merely descriptive of the grade of the offense, rather than of the criminal act which constitutes the offense, and ordinarily has no place in an instruction. In the case of State v. Johnson, 111 Mo. 578, MacFarlane, J., fully discusses this question and reviews all the authorities. This was a case of robbery. He says:

"It is particularly objected that the word 'feloniously' is used in the instruction to express the intent with which the act must have been done in order to make it criminal, and the word being technical should have been properly defined. It was said by Judge Henry in State v. Snell, 78 Mo. 242, in speaking of this word and the necessity of defining it, that 'it is employed to classify offenses, but is not a distinct element of a crime. If the facts proved establish a felony, then the crime was committed feloniously; if they establish a misdemeanor, the offense was not feloniously done. A correct definition of the word could not have aided the jury in their deliberations.' In State v. Scott, 109 Mo. 226, it is said: 'The word "felonious" is descriptive of the grade of the offense, rather than of the criminal act which constitutes the offense, and ordinarily has no place in an instruction.' Robbery is made a felony by statute, and the act of robbing is felonious, and all robbery is feloniously done. The use of the word in the instruction threw no light whatever upon the transaction. A correct definition could not have aided the jury in its deliberations, nor could the failure to define it 'have prejudiced defendant's case, or been an obstacle in the way of the jury to a proper verdict on the law and facts, as was said in State v. Snell, supra. We do not wish to be understood as saying or implying that the jury should not have been instructed as to what facts if proven, would have established a felonious intent, that is, the intent to commit the robbery.''

It will be noted that the instruction complained of requires the jury to find that the defendant took the property "with the intent at the time to wrongfully take and carry away and to fraudulently convert the same to his own use, and permanently deprive the owner thereof, without his consent." This declaration fully covered every element of the offense of larceny. The element of robbery preceded this in the instruction and was in due form. The term *felonious* or *feloniously* was not entitled to any place in the instruction; it was not necessary, and would furnish no aid to the jury in reaching a verdict.

This contention must be ruled against the appellant.

As to instruction number 2, it is sufficient to say that this instruction was applicable to the charge in the indictment, of being an habitual criminal; the jury found the facts as applicable to this instruction against the State, hence it is unnecessary for this court to discuss it.

This leads us to the important and vital contention in this case—the complaint that the trial court committed error in the admission of the testimony of witness Arthur Damschroeder.

As instruction number 8, complained of, is based upon this witness's testimony, it follows that the conclusion reached upon the admissibility of this testimony will determine the correctness or incorrectness of this instruction. Hence, it will only be necessary to treat of the action of the trial court in admitting the testimony.

The record of the testimony in this cause discloses that the prosecuting witness detailed with particularity the robbery as charged in the indictment, and that he identified the defendant as the perpetrator of the offense. Following his testimony, witness Arthur Damschroeder was introduced, and he, over the objections of the defendant, detailed with equal particularity the perpetration of a robbery upon the witness. The loca-

tion or place of the assault and robbery of Damschroe-
der is, according to the record, five or six blocks from
the first, a distance of a half or three-quarters of a mile.
The time as fixed between the two offenses is very
short.   An examination of this record, while the two
offenses were in the same locality and were closely fol-
lowed in point of time, discloses that they were not so
closely allied as to constitute one transaction; but were
separate and independent offenses.   This was the view
taken of it by the trial court, for the instruction given
proceeds upon the theory that the last robbery was a
separate and distinct crime, and the testimony was ad-
mitted on the ground that the jury had the right to con-
sider it in determining the intent of the defendant in the
commission of the offense charged, and in corroboration
of the prosecuting witness.

We take it that it must be conceded from the record
in this cause, that the robbery as testified to by Dam-
schroeder was a separate and distinct offense, entirely
disconnected from the offense with which the defendant
was charged; and this confronts us with the simple but
important question, does this testimony of a separate
offense fall within the exception of the general rule?

The general rule as to the admission of testimony
of the commission of offenses other than the one charged,
is that it is inadmissible. This rule is very tersely stated
by Mr. Bishop in his New Criminal Procedure. He says:

"The State can not prove against a defendant any
crime not alleged either as foundation for a separate
punishment, or as aiding the proofs that he is guilty
of the one charged, even though he has put his character
in issue." [1 Bish. New Cr. Proc. (4 Ed.), sec. 1120.]

And this announcement by Mr. Bishop is very
forcibly and appropriately emphasized in the recent
case of People v. Molineaux, 61 N. E. 293.   The court
says:

"This rule, so universally recognized and so firmly
established in all English-speaking lands, is rooted in

that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt.''

In the case of State v. Goetz and Martin, 34 Mo. 85, we find an able and exhaustive discussion of this question; it is so fully, fairly and ably discussed, and so nearly approaches the facts in this case, that it has specially, in the treatment of this contention, attracted our attention. The court, speaking through BAY, J., said:

''Against the objections of the defendants, the State gave evidence tending to prove that, on the same day, and near the same hour, and at stores in the vicinity of Jaccard's, the defendant had feloniously taken other articles from other persons. The admission of this evidence is the principal ground of error relied upon for a reversal of the judgment. As a general rule, evidence of matters other than those charged in the indictment are inadmissible; and the reason of the rule is obvious enough, for when a party is charged with a particular offense he has notice to be prepared to defend himself; but he can not be prepared to defend himself against a charge of which he has had no notice, and which is exhibited against him for the first time while on trial for another and distinct offense. But this rule is subject to various exceptions, rendered necessary by the difficulty which the prosecution labors under to establish the intent with which the act was done. Thus, upon an indictment for uttering a forged bank note, knowing it to be forged, evidence may be given of other forged notes having been uttered by the prisoner, in order to

show his knowledge of the forgery. If such evidence was inadmissible, it would be impossible, in ninety-nine cases out of a hundred, to fix a criminal intent upon the offender. So, on an indictment against a receiver for receiving several stolen articles, if it be proved that they were received at several times, the prosecutor may be put to his election; yet evidence may be given of all the receipts for the purpose of proving guilty knowledge. [2 Russ. on Crimes, 777.] So, in a case where the prisoner was indicted for forgery and uttering with guilty knowledge a bill of exchange purporting to be drawn upon a certain banking-house, it was held that other forged bills upon the same house, which were found upon the prisoner at the time of his arrest, were admissible as evidence of guilty knowledge. [Spencer v. Commonwealth, 2 Leigh 751.] On an indictment for an assault with an intent to commit rape, evidence of previous assaults on the prosecutrix are admissible to show the intent with which the assault in question was committed. [Williams v. State, 8 Humph. 585.] So, on an indictment for administering sulphuric acid to horses with intent to kill them; administering at different times was permitted to be shown in order to demonstrate the intent. [Rex v. Mogg, 4 Carr. & Payne 364.] Upon an indictment for maliciously shooting, if it be questionable whether the shooting was by accident or design, Mr. Russell says, proof may be given that the prisoner at another time intentionally shot at the same person. Various other cases might be referred to, in which evidence of other offenses than that charged in the indictment has been admitted to prove intent, but they fall within some of the exceptions to the general rule above stated; but we have been unable to find any reported case in which, upon a trial for larceny, evidence of another and distinct larceny was admitted to establish the one charged in the indictment. Upon the contrary, we have found cases in which it was held that such evidence was inadmissible, unless it should be

shown that some connection existed between the two
felonies.  In Regina v. Oddy, 6 Brit. Cr. Cases 266,
cited by the prisoner's counsel in this case, it was holden
that, on the trial of an indictment containing counts for
stealing, and for receiving the property of A. knowing
it to be stolen, evidence of the possession by the prisoner
of other property stolen from other persons at other
times was not admissible to prove either the stealing or
the receiving.  In Barton v. State, 18 Ohio 221, the de-
fendant was tried upon an indictment for the larceny
of a mare and gelding and a two-horse buggy wagon.
On the trial, it was proved that the defendant hired the
property from Taylor & Adams for the alleged purpose
of going to a town called Avon, a distance of about
thirty miles, and that on leaving he drove to Painesville,
about thirty miles distant in an opposite direction, and
was arrested on the same night.  For the purpose of
showing that the prisoner, when he hired the horses,
did not intend to return with them, the State proved by
one James Eberhart, that, on the night before the de-
fendant drove off the horses, he lodged with witness and
stole from witness twenty-five dollars in gold.  The
Supreme Court of Ohio held that the evidence was
clearly inadmissible.  The case of Walker v. Common-
wealth, reported in 1 Leigh 574, and in which BROCKEN-
BROUGH, J., delivered a very learned opinion, is, in many
respects, very similar to the case at bar.  The defendant
was indicted for stealing a watch, of the value of fifty
dollars, the property of one Elizabeth Bolton, and the
Commonwealth introduced evidence to show that the
watch had been taken, without the consent of the owner,
from her house, and on the same day was found in pos-
session of the prisoner.  The prisoner insisted that it
was loaned to him by said Bolton; and for the purpose
of establishing the felonious intent, evidence was given
by the prosecution that, on the same day he took the
watch, he also stole a cloak from another person.  Upon
an appeal to the General Court of Virginia, this evi-

dence was held inadmissible, and the judgment of the
lower court reversed.''

The court, in the last case cited, in further discuss-
ing the question as to the application of the testimony,
in the proof of intent, says:

''In the case at bar, the State had the benefit of the
usual presumption arising from the recent possession
of the stolen property, and was therefore not driven to
the necessity of proving intent by proving other felonies
committed about the same time; and it is not perceived,
therefore, how this case can be brought within any of
the exceptions above referred to. The offenses proved
were separate and distinct, and the defendants might
have been indicted for each and every one of them.
Though committed on the same day, and under circum-
stances of a similar character, yet they are not so
blended or connected that the investigation of one in-
volves an inquiry into the other.''

To the same effect is the case of State v. Tabor, 95
Mo. l. c. 590. SHERWOOD, J., very forcibly approves
of the well-settled, general rule in respect to testimony
of the character introduced in the case at bar. He
says:

''There was no foundation laid for admitting evi-
dence showing that the defendant had been confined in
the penitentiary and had escaped therefrom. Evidence
of another crime is never admissible unless so connected
with the one being investigated as to show that the com-
mission of the former had something to do with the per-
petration of the latter. Unless the apparently collateral
crime be brought into a common system, a system of
mutually dependent crimes, or unless it be so linked to
the crime under trial as to show that the former, though
apparently an extraneous offense, is not so in reality,
such evidence is not admissible; because it would be
highly unreasonable and unjust to convict a man of the
crime charged simply for the reason that he had been
guilty of another and distinct offense.''

Judge HENRY, in State v. Reed, 85 Mo. 194, very clearly expresses the views of the court on this subject. He says:

"On the trial of the cause the State was permitted to prove by one Kyle, declarations of Fredericks of defendant's participation in the theft of a horse belonging to one Gentry, stolen about the time that Kyle's mare was stolen. This testimony should have been excluded. The defendant was indicted, not for stealing Gentry's horse, or as an accessory after the fact to that theft, but as an accessory after the fact to the stealing of Kyle's mare. There was no such intimate connection between the two crimes that in proving the one, the evidence necessarily tended to prove the other. Nor is there any resemblance between these crimes and that of counterfeiting and passing counterfeit money, and similar cases in which it is allowable to prove other criminal acts than those charged in the indictment. These are exceptional cases."

In State v. Daubert, 42 Mo. 242, a case of larceny involving the same question as the one before us, WAGNER, J., said, citing State v. Goetz and Martin, 34 Mo. 85, in support of the position:

"The court erred palpably in admitting testimony of different acts of larceny, when they were entirely disconnected with the offense charged in the indictment and had no real tendency to prove the same. Upon the trial of an indictment for larceny, evidence of the commission of a separate and distinct larceny from that charged is inadmissible."

It will be noticed how uniform the foregoing cases are in support of this general rule and as indicating how firmly established is this principle of evidence. There is an entire absence in all the subsequent cases, of even a criticism of the rule as announced. On the contrary, they are approved in the cases of State v. Reavis, 71 Mo. 419, State v. Burlingame, 146 Mo. 207, State v. Harrold, 38 Mo. 496, and are in perfect accord

with the overwhelming weight of authority in the other States.

It is hardly necessary to discuss the cases decided by this court, falling within the exceptions to this rule. The case of State v. Goetz and Martin, supra, herein quoted from, fully reviews the cases in which the exception is applicable.

In the case of People v. Molineaux, supra, the grounds of the exceptions are very clearly stated in the very able opinion of the learned judge in that case. He says:

"Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish: first, motive; second, intent; third, the absence of mistake or accident; fourth, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; fifth, the identity of the person charged with the commission of the crime on trial."

In the case of State v. Greenwade, 72 Mo. 298, which was a case of robbery, the court very properly held the testimony was within the exception. In that case, an accomplice testified that there was a conspiracy or scheme to commit several robberies. To corroborate this accomplice as to this common design, the testimony of a robbery committed by the defendant about the same time was admitted; but the learned judge was particular in calling attention to the fact that the admission of this testimony did not conflict with the ruling in State v. Reavis, supra. The leading case attracting our attention in which all the authorities are very ably reviewed and discussed, is the case of State v. Myers, 82 Mo. 558. That case was predicated upon the statute for obtaining property by means of a trick or fraud. Testimony, as to similar acts, of those charged, were admitted, and properly so, for they fall within the exception as tending to prove the method of operating and intent of the defendant. After reviewing all the authorities, PHILIPS,

C., says, quoting from Bottomley v. United States, 1 Story 135:

"In all cases where the guilt of the party depends upon the *intent,* purpose or design, with which the act is done, or upon his guilty knowledge thereof, I understand it to be a general rule, that collateral facts may be examined into, in which he bore a part, for the purpose of establishing such guilty *intent,* design, purpose or knowledge." It will be observed in the last case cited, that the general rule is admitted.

In the case of State v. Wilson, 143 Mo. 334, it will be observed that is a case concededly falling within the exception. The crime charged was for fraudulently obtaining goods and involved the proof of intent. State v. Hodges, 144 Mo. 50, was a charge of forgery, and this is within the exception.

We deem this a sufficient reference to the cases where the rule as to the exception was applicable; however, there is one case which has attracted our attention and without an investigation of the record, the announcement of the rule by the learned judge would seem to be in conflict with all the authorities herein cited; that is, the case of State v. Balch; 136 Mo. 103. SHERWOOD, J., says:

"And it was competent, also, to introduce evidence of a subsequent robbery so recently and subsequently committed and in circumstances so very similar to the one under review as to show that that one was part of a system or series of criminal operations, and this for the purpose, also, of proving the guilty and common intent which prompted the doing of the act done, and as showing defendant's manner and method of performing such acts. See State v. Myers, 82 Mo. 558."

In support of this expression of opinion, he cites State v. Myers, 82 Mo. 558. In the Balch case, the defendant was charged with robbery, combined with the offense of larceny in stealing a watch. When he was arrested he had in his possession two watches. The

learned judge in the opinion, detailing the facts, says:

"Defendant claimed that the second watch was obtained by him on the night of his arrest in precisely the same way, being given to him by a party whom he had caught in a compromising position with a young woman. The State, in rebuttal, introduced a young woman named Robinson who testified (over the objection of defendant) that on the night he was arrested she was in company with one Morrow, sitting upon the grass, after a walk, when defendant came out of a clump of bushes near by and obtained the watch of Morrow under circumstances similar to those of the former case."

The broad announcement of the rule as above quoted must be construed as applicable to the particular facts upon which it is based. In view of the claim of defendant, this testimony was clearly competent in rebuttal, but it is clear that the learned judge never intended his expressions to be of general application, for the same able judge forcibly expressed his views in the case of State v. Tabor, supra, and no reference is made as to any change in his reasons, nor is there any mention of the long and unbroken line of decisions in this State, declaring in unmistakable terms the general rule upon this subject.

We have thus carefully discussed and reviewed the authorities as to the general rule, and the cases falling within the exception, and this leads to the determination of the question as to whether the testimony of witness Damschroeder in respect to the second robbery, falls within the exception of the general rule, in the admission of such testimony. We have reached the conclusion that it does not and that the learned trial judge committed error in its admission.

It may be urged that it was near the same time and locality. So were the larcenies committed in the Goetz case in the same city, near the same time and locality, and it appears in that case, that the proof embodied lar-

cenies committed in various stores, yet they were separate and distinct offenses, and were ruled to be inadmissible. The testimony of a separate offense must have some tendency to prove the charge in the indictment. It is admissible only on the ground that it has some logical connection with the offense proposed to be proven. It is clearly not admissible on the theory that if a person will commit one offense, he will commit another. From the instruction of the court given in this case, it appears this testimony was admitted for the purpose of showing intent. This was error; the facts constituting the offense, and the very act itself, as shown by the prosecuting witness, was sufficient evidence of intent. The act of defendant, if he committed it, needed no explanation to indicate intent. The act itself carried the intent with it.

The instruction further proceeds on the theory of corroboration. We are unable to discover how the details of the robbery, as to witness Damschroeder, tended to prove that he robbed the prosecuting witness. It is true the time was close; but the distance was a half or three-quarters of a mile between the two. It had no such tendency, except we take the view that because he commits one offense, he would commit another, and as before stated, this is not the rule.

The only testimony of witness Damschroeder which is admissible in this case, is that part, and that part alone, in which he states that he saw the defendant in the locality where prosecuting witness was robbed. This much of his testimony the State was entitled to; but the detailing of all the facts constituting another robbery, was, we think, clearly incompetent. "Upon the trial of a person charged with assault to rob, it is not competent for the State, in aid of the prosecution, to prove other assaults committed by the defendant, whether with or without intent. In so far as the testimony admitted tended to show that the defendant was in the vicinity at the time the offense charged in the in-

dictment was committed, it was clearly admissible; but in so far as it tended simply to show an attack of like character committed by him upon another person, and at another time and place, it was clearly inadmissible." [State v. Clover, 31 Oh. St. 102.]

Defendant was only required to meet the charge of robbery, in the indictment, and he is not required, nor is he presumed to know, that he will have to meet and repel testimony as to a separate and distinct offense. This is loading him with a burden that the law does not sanction. The State had the testimony of the prosecuting witness as to this robbery, his identification of the defendant, and ample testimony, if believed by the jury, to convict him, and there was no necessity for invading well-settled rules of evidence.

For the reasons herein expressed, the judgment will be reversed and cause remanded. All concur.