**STATE of Missouri, Respondent,**

v.

**Leroy Edward PHILLIPS, Appellant.**

**Leroy Edward PHILLIPS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 43503, WD 44617.**

Missouri Court of Appeals,
Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Application to Transfer Denied
June 29, 1993.

Christopher Graham, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Leroy E. Phillips appealed from the judgment, entered following jury verdict, convicting him of first degree sexual abuse, section 566.100, RSMo 1986. Mr. Phillips also appealed the denial of his Rule 29.15 postconviction motion, and the appeals were consolidated. Rule 29.15(l). On May 12, 1992, by opinion of this court, the judgment of conviction and the denial of the postconviction motion were affirmed. *State v. Phillips*, No. WD 43503 (May 12, 1992). Mr. Phillips applied to the Supreme Court of Missouri for its order of transfer. On February 23, 1993, the Supreme Court of Missouri transferred the consolidated cases and ordered the cases retransferred to this court for reconsideration in light of *State v. Bernard*, No. 74775, 849 S.W.2d 10 (Mo. banc 1993).

Among the issues raised by Mr. Phillips on appeal, and the one to which *Bernard* applies, was his contention that the trial court erred in allowing C.M., Mr. Phillips's stepgranddaughter and the victim of the charged offense, and J.G., another minor, to testify that when they were eleven years

old, Mr. Phillips engaged each of them on several occasions in uncharged sexual misconduct similar to the conduct for which Mr. Phillips was charged. The trial court permitted the testimony under the common scheme or plan exception to the rule precluding introduction of evidence of unrelated and uncharged criminal conduct. Resolution of this issue is dispositive of the appeal and the Rule 29.15 postconviction motion. The judgment of conviction is reversed, and the case is remanded for a new trial.

The purported incident, which is the basis for the charged criminal conduct, occurred in April 1989. C.M. testified that she was then eleven years old and temporarily residing in her maternal grandmother's and stepgrandfather's house with her mother and a sibling. She was reading the newspaper on her grandparents' bed when Mr. Phillips entered the bedroom and sat next to her. C.M. testified that Mr. Phillips pulled her underpants down and placed his index finger in her vagina.

In addition to presenting testimony specifically about the occurrence alleged in the information, C.M. was permitted to testify that Mr. Phillips engaged the witness in uncharged sexual molestation approximately twenty additional times, commencing when the witness was nine years old. C.M. testified that during half of the alleged incidents, Mr. Phillips sexually molested her on a canopy bed in the room where C.M. slept when visiting her grandparents. During the other ten incidents, C.M. testified that Mr. Phillips molested her on the bed where Mr. Phillips's stepdaughter (mother of C.M.) slept when she visited her mother, Mr. Phillips's wife. C.M. testified that Mr. Phillips never threatened her. Not until the episode in April 1989, for which Mr. Phillips was charged, did he tell C.M. not to report the activity to anyone, C.M. testified.

J.G., who was fifteen years old at the time of the trial, testified that when she was eleven years old, Mr. Phillips developed a close relationship with her and her family. Mr. Phillips offered to assist J.G. with problems that she was having with her family. He included her in his family's activities and accompanied her to various events. Mr. Phillips, according to an investigating police officer, professed to considering J.G. as he would his own granddaughter.

J.G. testified that Mr. Phillips had inappropriately touched her vaginal area on three different occasions when she was eleven years old. She said that the first time occurred when Mr. Phillips took her fishing at J.G.'s family's lake property. She said that the second time occurred in a pickup truck when Mr. Phillips had taken her to view puppies. The third time occurred, J.G. said, when Mr. Phillips attempted to touch her vaginal area while she was at his barber shop. Mr. Phillips denied each of these allegations to police authorities in December 1988, and no charges were filed against him for the purported incidents.

In *Bernard,* the Missouri Supreme Court addressed the series of cases that applied the common scheme or design exception to the rule that evidence of other uncharged and unrelated crimes is not admissible. *Bernard,* 849 S.W.2d at 12–20. Evidence of other, uncharged misconduct is permissible

> when it " 'tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial.' "

*Id.* at 13 (quoting *State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992); *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286, 294 (1901)). The court remarked that *State v. Koster,* 684 S.W.2d 488 (Mo.App.1984), expanded the common scheme or plan exception beyond that traditionally allowed. *Id.* 849 S.W.2d at 15. *Bernard* noted that the recent trend in Missouri has been to allow the liberal admission of evidence of the prior sexual misconduct of a defendant charged with the sexual abuse of a child under the premise that such evidence is

proof of motive, identity or common scheme or plan. *Id.* at 13. The court concluded that liberal use of the common scheme or plan exception has resulted in a distortion of the original purpose of the exception. *Id.* The court then reviewed the case history regarding application of the common scheme or plan exception and determined that certain cases which define the exception will no longer be applied when determining whether to admit evidence of prior sexual misconduct in cases involving a charge of sexual misconduct. *Id.* at 16.

■ The court adopted a new "signature modus operandi/corroboration" exception to the rule excluding evidence of a defendant's uncharged prior misconduct. *Id.* at 17. The court noted that this exception is analogous to the recognized exception that permits evidence of prior uncharged misconduct for the purpose of proving the wrongdoer's identity. *Id.* at 16. "If the identity of the wrongdoer is at issue, the identity exception permits the state to show the defendant as the culprit who has committed the sexual crime charged by showing that the defendant committed other uncharged sexual acts that are sufficiently similar to the crime charged in time, place and method." *Id.* The court further stated that for prior misconduct to be classified within this established exception and admissible, "[t]he charged and uncharged crimes must be nearly 'identical' and their methodology 'so unusual and distinctive' that they resemble a 'signature' of the defendant's involvement in both crimes." *Id.* at 16–17 (quoting *State v. McDaniels,* 668 S.W.2d 230, 232–33 (Mo.App.1984); *State v. Young,* 661 S.W.2d 637, 639 (Mo. App.1983)). Thus, *Bernard* teaches that evidence of prior sexual misconduct that corroborates the testimony of the victim should be nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's modus operandi. *Id.* at 17 (quoting *Sladek,* 835 S.W.2d at 317 (Mo. banc 1992)). The court stated that "[t]his is a threshold requirement that must be met before the trial court can proceed to weigh any additional factors in determining the question of admissibility." *Id.*

Examination of the facts in *Bernard* is instructive. In *Bernard,* the defendant was charged with sexual abuse in the first degree and attempted forcible sodomy. Sections 566.100, 566.060, RSMo 1986. The victim was a fourteen-year-old male who attended the church in which the defendant was the interim pastor. A close relationship developed between the defendant and the victim's family. In October 1988, the defendant convinced the victim's parents to permit him to give a surprise birthday party for the victim. As part of the festivities, the defendant and the victim's parents agreed that the victim would spend the night before the party with the defendant. The victim's parents assumed that the victim would stay at the defendant's house.

The evening of October 21, 1988, the defendant entertained the victim. The defendant's daughter and the victim's sister, both college students, attended a movie with the defendant and the victim. After the movie, the defendant drove the young women to their college dormitory where the women exited the vehicle. The defendant then took the victim to a motel where he rented a room for himself and the victim. During the course of the evening, the defendant convinced the victim to engage in "strip rummy." The game ended with both participants in their underwear. They both got into a single bed and fell asleep.

The victim testified that during the night he was sexually abused. He was awakened during the night. The defendant was rubbing his back, arm and chest. The defendant then rubbed the victim's genitals. The victim told the defendant to stop, but the defendant continued to place his hands on the victim's genitals. Although making several attempts to stop the defendant, the victim was unable to remove the defendant's hand from his genitals. Later during the night, the defendant placed his erect penis against the victim's genitals. The victim could not push the defendant away.

The next morning, the defendant caressed the victim's arms and legs again.

Later, the defendant requested that the victim allow him to take a picture of the victim nude. The victim refused. He did agree to his picture being taken in his underwear. The defendant had the victim take the nude defendant's picture. When the victim and the defendant left the motel, the defendant encouraged the victim to take off his clothes and run around the defendant's car or to walk around the car in his underwear. The victim refused. The victim did not report the events until more than a year later.

During the trial, testimony was elicited from four male witnesses who were prior members of a church youth group that the defendant had previously instructed. Each of the four witnesses, then twenty-five years old or older, testified that when he was fourteen years old or younger the defendant engaged him in bizarre sexual activity. One of the witnesses testified that the defendant showed him pictures of young men unclothed whom the witness knew to attend the school that he attended. The defendant showed the witness a photograph of the defendant naked. When the witness spent a night at the defendant's house, the defendant got into bed with the witness and touched the witness's genitals.

Another of the four witnesses testified that the defendant conducted "initiations" at which male members of the youth group were supposed to stand on the church pulpit and achieve an erection. Another incident disclosed that the defendant directed a boy to place ice cream syrup at the end of the boy's penis and for another boy to lick it off. Another incident involved the defendant tying a boy to a table and applying mayonnaise to the boy's genitals, releasing the boy and directing the boy to masturbate.

Other incidents were recounted by each of the four witnesses which involved conduct of the defendant common to each of the witnesses. Each of the four witnesses testified that the defendant required them, apparently on different occasions, to sit naked upon the hood of a slow-moving automobile driven by the defendant or to jog naked in front of a vehicle driven by the defendant, while other boys were in the car watching.

The Court recognized the similarity of the occurrences about which the four witnesses testified. However, the Court identified only one type of uncharged act that was not just nearly identical to the conduct related by each of the witnesses but which was "so unusual and distinctive that the prior acts resemble the signature of the defendant's involvement in the present crime." *Id.* at 19. The court stated,

> Appellant's conduct involving his preference for naked or partially clothed boys in motion on or around an automobile is more than merely similar in nature to the sexual assault with which appellant is charged; it operates as a "signature" of appellant's involvement in both crimes. Appellant's conduct in this respect is so unusual and distinctive as to "earmark" it as the conduct of the accused and, thus, to corroborate the testimony of the victim in the present case.

*Id.* at 19. The Court said that only testimony regarding this conduct was admissible and recognized that although the other conduct about which the witnesses testified was "similar, even nearly identical, it [was] not so unusual and distinctive as to be a signature of appellant's modus operandi." *Id.*

In this case, Mr. Phillips was charged by the information with subjecting a minor to sexual contact, in violation of section 566.-100, RSMo, between the 1st day of April, 1989 and the 30th day of April, 1989. C.M. testified that in April 1989, she was reading a newspaper on her grandparents' bed when Mr. Phillips entered the bedroom and sat next to her. C.M. testified that Mr. Phillips pulled her underpants down and placed his index finger into her vagina. C.M. was permitted to testify that Mr. Phillips had engaged in the same deviate conduct with her at his house on approximately twenty other occasions, commencing when the victim was nine years old. Mr. Phillips was only charged with having molested C.M. the single time in April 1989.

J.G., age fifteen at the time of her testimony, also testified at Mr. Phillips's trial

that Mr. Phillips touched her vaginal area on three different occasions when she was eleven years old. She was permitted to recount those three occasions. Mr. Phillips was never charged for those alleged incidents.

*Bernard* limits the introduction of evidence of uncharged criminal conduct to evidence that "operates as a 'signature' ... in both crimes," the charged offense and the uncharged occurrence. *Id.* at 19. The similarity of the offenses is insufficient by itself to support introduction of evidence of the uncharged offense if the evidence of the uncharged event "is not so unusual and distinctive as to be a signature of appellant's modus operandi." *Id.* In *Bernard,* the many similar, almost identical, sexual and sexually related acts involving the defendant's conduct with the four witnesses were erroneously and prejudicially admitted. Only the defendant's bizarre imposition upon the four boys that they each, on separate occasions, sit naked on the hood of a slow-moving automobile that he drove. or his manifested proclivity for the boys to run naked in front of the car driven by the defendant qualified as conduct so unusual and distinctive as to constitute a " 'signature' of the [defendant's] involvement in both crimes." *Id.*

In this case, while the allegations of both C.M. and J.G. were similar to the single offense charged, nothing testified to by either C.M. or J.G. constituted "evidence so unusual or distinctive as to be a signature of [Mr. Phillips's] modus operandi." *Id.* The testimony of both C.M. and J.G. relating to uncharged deviant sexual conduct involving Mr. Phillips was prejudicial error.

The judgment of conviction is reversed. The case is remanded for a new trial.

. All concur.