STATE of Missouri, Plaintiff/Respondent,

v.

**Richard L. JONES, Defendant/Appellant.**

**Richard L. JONES, Movant/Appellant,**

v.

**STATE of Missouri,
Respondent/Respondent.**

Nos. 65806, 68011.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Feb. 6, 1996.

854

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

A jury found defendant guilty of numerous counts of first degree deviate sexual assault, § 566.070, RSMo 1986. The jury assessed the maximum punishment on each count. The trial court imposed sentence in accordance with the jury's verdict, running all sentences consecutively. Defendant appeals the judgment and the denial of his Rule 29.15 motion.

Defendant raises seven points on appeal. In his first point, he alleges the trial court erred in overruling his objections to evidence of defendant's uncharged misconduct. This point requires us to reverse and remand for a new trial. Our discussion of other points is limited to those that may arise at retrial.

## I. Background

We state the evidence in a light most favorable to the verdicts. Defendant served as a pastor at a church in southeast Missouri.

All of the charges against him involve two boys attending the church, Sam[1] and Bill.

Sam began attending in December, 1989, about the time he turned fourteen. Bill began attending in the summer of 1990, when he was fifteen. Both boys were active in the church's youth group. Defendant was one of two people primarily in charge of the youth group.

Sam and Bill began spending time with defendant outside of youth group activities. Eventually, both boys began spending the night at defendant's house. They would "sit around [and] watch TV."

Some time during the summer of 1990, defendant initiated sexual contact with Sam during one of these overnight visits. While watching TV, defendant touched Sam's genitals. Eventually, defendant asked Sam to take his shorts off and defendant masturbated Sam. He then had Sam masturbate him.

Bill testified to an almost identical first sexual encounter with defendant. Sam, Bill, and defendant were watching TV on defendant's couch and defendant similarly engaged the two boys in masturbation.

Both boys testified to numerous other sexual encounters with defendant. We need not detail them here.

In addition to the above testimony, the prosecution elicited voluminous testimony from the boys and others concerning defendant's conduct before, during, and after the charged incidents. It is the admissibility of this evidence which defendant questions in his first point on appeal.

## II. Evidence of Uncharged Misconduct

In defendant's first point, he alleges the trial court erred in overruling his continuing objection to State's evidence of uncharged

misconduct. He complains about eight pieces of evidence. We first discuss the two which clearly require us to reverse and remand for a new trial.[2]

Defendant filed a motion in limine to exclude evidence of uncharged misconduct. He alleged such "evidence is inadmissible, irrelevant, immaterial, and its probative value is vastly outweighed by its prejudicial impact." In support, he cited *State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993) and *State v. Phillips*, 854 S.W.2d 803 (Mo.App.W.D.1993).

At the hearing on the motion, the prosecutor argued that the evidence was admissible as "the foundation of antecedent probability or the corroborative evidence of the crime." Some of the evidence the prosecutor referred to included events leading up to the specific charged crimes. However, in addition, the prosecutor said that in his opening statement, he intended to mention what other people "said that [defendant] had done," and that "other people had done it with [defendant]."

Also, the prosecutor said he planned to mention that defendant told Sam he "had sexual relations with a boy somewhere down in Springfield." The prosecutor argued, "That's all corroborative."

The court overruled the motion in limine. Defendant asked for a continuing objection which the court granted. In his opening statement, the prosecutor referred to sexual encounters with a person named Jim and another boy in Springfield.

At trial, before the State's witnesses testified about the evidence hereafter discussed, defendant made a similar objection. The trial court overruled the objection and allowed another continuing objection.

As a general rule, evidence of uncharged misconduct is inadmissible to show

1. All names used in this opinion are fictitious.

2. After *State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993), the General Assembly enacted § 566.025, RSMo 1994, effective January 1, 1995. This new legislation permits evidence of uncharged crimes in certain situations. One of the requirements is that the victim be under fourteen years of age.

In the case before us, both boys were over 14. As a result, § 566.025 is not applicable. For the same reason, the recent decision of *State v. Brown*, 912 S.W.2d 643 (Mo.App.W.D.1995), is not applicable. There, the victims were both under 14.

the propensity of a defendant to commit the crime charged. *Bernard*, 849 S.W.2d at 13. Although the fact that a defendant behaved badly on prior occasions has some measure of *logical* relevance, it carries such an inordinately high risk of abuse that such evidence lacks *legal* relevance and should be barred. *Id.* at 22 (Robertson, C.J., concurring).

Stated another way, a jury is likely to penalize a defendant because he is a "bad guy" even though he may or may not be guilty of the charged crime. *State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992) (Thomas, J., concurring). Thus, courts have decided that evidence of uncharged misconduct is "not admissible on the theory that, if a person will commit one offense, he will commit another." *Id.* at 311 (quoting *State v. Spray*, 174 Mo. 569, 74 S.W. 846, 851 (1903)).

■ Prior to *Bernard*, there were five enumerated exceptions to the general rule. Evidence of uncharged misconduct was said to be admissible when it tended to establish "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial." *Bernard*, 849 S.W.2d at 13.

*Bernard* adopted a new exception called the signature *modus operandi*/corroboration exception. *Id.* at 17. Under the new exception, evidence of uncharged misconduct "must be more than merely similar in nature to the sexual assault for which the defendant is charged." *Id.* To be admissible, the evidence "should be nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's *modus operandi*." *Id.*

■ In the case before us, over objection, Sam was allowed to testify as follows:

Q. Did he ever tell you that he and his friends had done things you were doing?

A. Yes.

Q. Tell me what he said about that.

A. He said that him and some friends, and most of them were like preachers and stuff now or they were in the churches, and would all get back together and talk about things they used to do when they were young, and they would do it again.

Q. What was he talking about?

A. They'd masturbate each other and stuff like that.

Q. Did he ever tell you that he had any of these type relationships with anyone else in your church?

A. In the church that I went to?

Q. Right.

A. Family Life?

Q. Yes, any other boys that you knew?

A. None of them that went to that church. He told me about some other people, except for—oh, [Jim]. He told me [Jim].

Q. What did he tell you about [Jim]?

A. He told me that him and [Jim], that [Jim] used to go to church a long time ago but then he quit and then he left for a while. But when he went to the church, that him and [Jim] used to masturbate each other. They did that once or twice, but then after that, they'd just see each other and they'd spend some time, and when they did they'd masturbate themselves after that.

\*   \*   \*   \*   \*   \*

Q. Did he mention any other sexual contact with any other person?

A. Yes.

Q. What did he say about that?

A. He talked about one kid that he knew.

Q. When you say kid, was he talking about a boy or a girl?

A. Boy.

Q. All right.

A. There was two of them. One was in Springfield and one was in Kansas.

Q. What did he say?

A. I don't remember what story goes with what, but he told me one of the kids, one of the boys had accused him of doing that when he was at the church, and [defendant] hadn't done anything with him he said. But the kid, the boy wanted to, had a crush on [defendant], and that [defendant] got kicked out. Later on, after I kept hanging around with [defendant], he told me that one time things happened between me [sic] and him.

Q. So at first he told you it didn't but then later on he told you it did?

A. Yes.

Q. And there was another incident, too?

A. Yeah, the one in Kansas.

Q. Did he say what happened there?

A. Yeah. He said that he was with a boy that was in his youth group that went there for a while and ended up doing— masturbating him and oral sex and all that, and then after a while the kid told his brother about it and then [defendant] ended up doing it with his stepbrother.

Also, a police officer testified about his conversation with defendant. In his testimony, he mentioned defendant's sexual misconduct in Springfield.

The above testimony concerning defendant's sexual misconduct with other boys and other pastors may be similar in nature to the crimes charged in this case. However, when one compares it with the testimony in *Bernard*, it is not "so unusual and distinctive to be a signature." Therefore, it is inadmissible. *See id.* at 17; *see also State v. Conley*, 873 S.W.2d 233, 236 (Mo. banc 1994); *State v. Phillips*, 854 S.W.2d 803, 807 (Mo.App.W.D. 1993).

In *Bernard*, the defendant was convicted of sexual abuse and attempted forcible sodomy. There, the defendant took victim to a motel, put his hands on victim's genitals, and placed his erect penis against victim's genitals. They slept in the same bed. The next morning, the defendant caressed victim and asked if he could take a nude picture of victim. Victim refused, but allowed the defendant to take a picture of him in his underwear. Upon leaving the motel, the defendant asked victim to take off his clothes and run around the car. Victim refused.

The trial court permitted four witnesses to testify about events involving the defendant which occurred several years earlier. Their testimony is summarized in *Bernard* at pages 18 and 19. Without repeating it, the testimony included descriptions of (1) a "Dare Club"; (2) the initiation ritual which required them to sit naked upon the hood of a slow-moving car; (3) new members running naked in front of a car the defendant drove; (4) the defendant organizing masturbation parties; and (5) pictures of naked, or partially naked, young males.

The four members forming the majority in *Bernard* held that the only admissible evidence of prior sexual misconduct was "conduct involving [defendant's] preference for naked or partially clothed boys in motion on or around an automobile." *Bernard*, 849 S.W.2d at 19. All other evidence given by the four witnesses was inadmissible. *Id.* The judgment was reversed and remanded for a new trial. *Id.* at 21.

The other three members of the *Bernard* court concurred in reversing and remanding. They differed with the majority because they believed *none* of that testimony should be admitted on remand. *Id.* (Robertson, C.J., concurring); *Id.* at 24–25 (Thomas, J. concurring); *Id.* at 21 (Limbaugh, J. concurring).

The testimony in *Bernard* and that before us has many similarities. This, in view of *Bernard's* holding, compels us to conclude the trial court erred in overruling defendant's objections to evidence of defendant's sexual misconduct with other boys and pastors.

■ Having reached that conclusion, we must determine whether the error requires

reversal. If the "evidence of guilt is so overwhelming as to eliminate any reasonable doubt that the defendant would have been found guilty even without the erroneously admitted evidence," the presumption of prejudice is overcome. *State v. Troupe*, 863 S.W.2d 633, 636 (Mo.App.E.D.1993).

In *Troupe*, we found the erroneously admitted evidence did not influence the jury. In reaching that decision, we noted that (1) the victim's testimony was corroborated by playmates and a neighbor; (2) medical evidence of seminal fluid in the victim's anus corroborated the sodomy; (3) defendant's actions strongly demonstrated consciousness of guilt; (4) the State's evidence was undisputed; and (5) because defendant was a prior and persistent offender, the jury did not assess the punishment. *Id.* at 636.

On the facts before us, we cannot find that the admission of this testimony was harmless. The outcome of the case ultimately depended on the jury's assessment of the witnesses' credibility. Their testimony was in sharp conflict.

The two boys said defendant engaged in 29 acts of deviate sexual assault. The prosecuting attorney's investigator and a police officer who interviewed defendant said he acknowledged being involved in mutual masturbation with the boys two or three times. However, they did not obtain a written or recorded statement from defendant. Moreover, in defendant's testimony, he denied making these statements.

A former member of defendant's church testified that when he was with defendant and another member, defendant said he had masturbated with the victims. However, both the other member and defendant denied defendant made any such statement.

Sam testified that defendant told him that defendant and Jim used to masturbate each other. However, Jim testified and denied any sexual contact with defendant.

The case before us also differs from *Troupe* in that there is no medical or physical evidence. Thus, the evidence of guilt is not so overwhelming as to eliminate any reasonable doubt of guilt. *Cf. Troupe.*

Further, unlike *Troupe*, defendant was not charged as a prior and persistent offender. Thus, the jury assessed defendant's punishment, while in *Troupe* the court assessed punishment.

Before leaving this point, we briefly turn to other evidence which may be offered at retrial. Defendant complains six other categories of evidence were erroneously admitted. That evidence was defendant:

"(1) engaged several youth group members in various games in the presence of other adults;

(2) engaged several male youth group members in 'The Game' wherein sexual questions were asked and answered;

(3) 'racked' male members of the youth group after losing a game of 'Risk';

(4) took several youth group members to the St. Louis area and drove them past prostitutes and 'gay bars';

(5) took several youths to Forest Park to see 'gay people ... do their little routine';

(6) told [Sam] about a family curse and an experience in a rest area."

This evidence falls into two categories. One category is evidence the State elicited from Bill and Sam. The other is evidence the State elicited from other witnesses. The trial court did not err in overruling defendant's objections to the first category; it did as to the second.

Concerning the evidence elicited from Bill and Sam, *Bernard* gives guidance. The court noted that although evidence of the defendant's prior misconduct is not admissible to show propensity, it is

admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish *directly* the accused's guilt of the charges for which he is on trial *and* if the evidence is legally relevant, in that

its probative value outweighs its prejudicial effect.

*Bernard,* 849 S.W.2d at 13 (emphasis added; citations omitted). Evidence of uncharged misconduct that is "part of the circumstances or the sequence of events surrounding the offense charged" is admissible. *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc 1994).

Bill and Sam's testimony concerning each of the six enumerated areas involved them personally. In addition, all of their testimony concerned events which occurred within approximately six months prior to the first charged offense and continued throughout their acquaintance with defendant. This evidence involved activities with sexual overtones, which allegedly culminated in the charged offenses. Such evidence is admissible to show the circumstances and sequence of events which surrounded and led up to the charged offenses and is admissible to present a complete and coherent picture of the events which transpired. *Id.*

■ Moreover, evidence of prior acts of sexual misconduct between a defendant and the victim is admissible to show a defendant's motive for committing the charged crime. *State v. Dudley,* 880 S.W.2d 580, 583 (Mo. App.E.D.1994). Such evidence indicates a defendant's "sexual desire for that particular victim and tend[s] to establish the defendant's *motive* for committing the charged crimes, i.e., satisfaction of sexual desire for the victim." *Id.* Thus, the trial court did not err in overruling defendant's objections to Bill and Sam's testimony in these six areas.

We turn now to the second category of evidence. This category involves testimony from witnesses other than Bill and Sam. It does not fall within *Bernard*'s requirements.

■ *Bernard* requires prior misconduct evidence be both logically and legally relevant. *Bernard,* 849 S.W.2d at 13. To be logically relevant, the evidence must have some "legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial." *Id.* Most of the evidence from these witnesses has no tendency to *directly* establish defendant's guilt.

Further, none of this evidence is legally relevant. Its probative value does not outweigh its prejudicial effect. Unlike much of Bill and Sam's testimony, the record is unclear as to when the events testified to by these witnesses occurred. The events may have spanned a period of several years. Also, because Bill and Sam testified about each of the events involving them, the testimony from the other witnesses was cumulative, unnecessary, and prejudicial. The trial court erred in overruling defendant's objections to these witnesses' testimony. Thus, defendant's first point is granted in part and denied in part.

## III. Plain Error and Ineffective Assistance of Counsel

In the second point and subpart A of the third point, defendant asserts plain error. Because we reverse on other grounds, we will not review for plain error.

In subpart B of the third point and in the fifth point, he claims ineffective assistance of counsel. Because defendant will have a new trial, we need not address these issues.

## IV. General Reputation of Witness

■ In defendant's fourth point, he alleges the trial court erred in "sustaining the State's objection and precluding [him] from presenting evidence to impeach [Sam's] credibility by showing that 'telling a [Sammie]' was the equivalent of lying."

The prosecuting attorney filed a motion in limine to prohibit defendant from making any reference or eliciting testimony about "telling a [Sam]" or "telling a [Sammie]." The trial court sustained the motion.

At trial, defense counsel indicated his desire to inquire about the meaning of "telling a [Sammie]." However, counsel did not make an offer of proof of the expected answer. Thus, it is doubtful defendant pre-

served this point. However, because this issue may arise on retrial, we elect to address it.

■ The complaining witness in a sex offense case may be impeached by evidence that his *general reputation* for truth and veracity is bad. *See State v. Foster*, 854 S.W.2d 1, 4 (Mo.App.W.D.1993). Here, the trial judge told defense counsel that he was not precluded from presenting Sam's general reputation in the community. However, the trial judge told counsel that he would not permit someone to "use that phraseology and testimony." The trial judge did not abuse his discretion in so limiting the inquiry. Point denied.

## V. Prior Sexual Conduct of Witness

■ In defendant's sixth point, he alleges that the trial court erred "in sustaining the State's objection and precluding [him] from confronting [Sam] with two incidents of consensual sexual relations with [others]." Defendant argues, "The State ... put [Sam's] sexual conduct in issue, and [defendant] was therefore entitled to confront [Sam] with his prior sexual conduct."

Section 491.015, RSMo 1994, governs this issue. "[E]vidence of specific instances of the complaining witness' prior sexual conduct ... is inadmissible" unless such evidence fits within one of the four listed exceptions. § 491.015.1, RSMo 1994. Defendant failed to demonstrate that the offered evidence meets the threshold requirement of § 491.015. *See State v. Jones*, 716 S.W.2d 799, 800 (Mo. banc 1986). Point denied.

## VI. Defendant's Request for Counsel

■ In defendant's seventh and final point, he alleges that the trial court erred in overruling his motion to suppress statements made by him to police and admitting them into evidence. He claims the police failed to stop interrogation after he requested counsel. He argues that admission of statements made to police after his request for counsel violates his privilege against self-incrimination.

Before defendant was arrested, police interviewed him at the station. Officers informed him of his *Miranda* rights. He indicated that he understood his rights and he wanted to speak to the officers.

After about an hour of questioning, the prosecuting attorney's investigator told defendant that Sam and Bill made sexual allegations against him. The investigator asked, "Has there ever been any sexual contact between you and the boys?" Defendant answered by saying, "Do I need an attorney?" The investigator replied, "I'm not an attorney. I'm an investigator." He told defendant he was free to leave and get an attorney. Defendant indicated he wanted to stay and cooperate.

Defendant asked the same question, "Do I need an attorney?" several times, and the investigator's reply was always the same. Defendant stated he wanted to stay and talk. He then made incriminating statements which the State used against him at trial.

■ The Fifth Amendment prohibition against compelled self-incrimination provides an accused with the right to have counsel present during custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966). In order to safeguard that right, in *Edwards v. Arizona*, 451 U.S. 477, 485–86, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981), the Court held that when an accused person in custody has requested counsel he shall not be questioned further until counsel has been made available to him. This rule only applies when the accused clearly asserts his right to the assistance of counsel. *State v. Reese*, 795 S.W.2d 69, 72 (Mo. banc 1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991).

In *Davis v. United States*, —— U.S. ——, ——, 114 S.Ct. 2350, 2355–56, 129 L.Ed.2d 362, 371–72 (1994), the Court emphasized that the suspect must unambiguously request counsel. It observed that a statement is either an assertion of the right to counsel or it is not. *Id.* A suspect "must articulate

[the] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* The Court declined to "require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney." *Id.* The Court also declined to adopt a rule which would require officers to ask clarifying questions. *Id.*

Here, defendant did not unequivocally state that he wanted an attorney. He asked, "Do I need an attorney?" Thus, his right to have questioning cease was not implicated. *See State v. Wilkinson,* 861 S.W.2d 746, 748–49 (Mo.App.S.D.1993). Point denied.

The judgment is reversed and the cause is remanded for a new trial.

REINHARD, P.J., and AHRENS, J., concur.