RAMIREZ, J.
(dissenting).
I respectfully dissent. Either during or prior to his first interrogation Chaney asked Detective Capote whether he needed a lawyer. The issue in this appeal is whether the detective’s “response” of “Do you think you need one?” was an honest and fair answer, or whether the detective was being evasive, skipped over the question, or was attempting to override or “steamroll” the defendant. If I were writing on a clean slate, I would agree wholeheartedly with the majority, but in my view, reversal is mandated by the Florida Supreme Court’s decisions in Almeida v. State, 737 So.2d 520 (Fla.1999) and State v. Glatzmayer, 789 So.2d 297 (Fla.2001).
It is important to place this exchange between Chaney and the detective in context. Approximately two hours earlier, Chaney had walked into the police station with blood spattered over his forehead and clothes and told the front desk officer that he had just shot someone in self-defense. The testimony regarding this issue was as follows:
Q: [by defense counsel] Now, at what point did you ask him if he needed a lawyer?
A: [by Detective Capote] I don’t remember exactly when he asked me that.
Q: What was your response when he asked you that?
A: I asked him: Do you think you need a lawyer.
Q: And what did he say?
A: He really didn’t say anything.
* * * * * *
*953 Q: What do you think his response was when you said what do you think—
A: I don’t think he said anything.
Q: Okay. So you don’t remember exactly what point of sequence this was?
A: No.
Q: Was it during the time that he was reading the rights?
A: I don’t remember.
Q: Was it prior to the questioning beginning?
A: Again, I don’t remember.
When Chaney asked Detective Capote whether the detective thought Chaney needed a lawyer, it seems clear that Chaney “was asking the officer for fundamental information concerning his right to counsel.” Almeida, 737 So.2d at 524. It was a question that called for an answer. “It was not a rumination or rhetorical question.” Id. As with Almeida, Chaney was seeking a frank answer. The officer “answered” the question with a question. The holding in Almeida teaches that “if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer.” Id. at 525. Detective Capote failed to do that.
The majority seems to read Almeida as requiring the defendant to show that the response was “intended to steam roll the suspect.” Almeida mentions “steamroll” in the disjunctive: “To do otherwise — i.e., to give an evasive answer, or to skip over the question, or to override or “steamroll” the suspect — is to actively promote [] coercion....” Id. (emphasis added).
After Almeida was read his rights, the officers began questioning him and one of the officers asked him, “Do you wish to speak to me now without an attorney present?” Id. at 522. After a pause of several seconds, Almeida asked, “Well, what good is an attorney going to do?” The officer did not respond, and continued with his line of. questioning.
I read Almeida as delineating a clear directive:
Article I, section 9, Florida Constitution, requires that whenever a suspect’s rights are clearly raised in the interrogation room — whether by police or the suspect — officers must pursue the matter in an open and forthright manner. In such a situation, gamesmanship of any sort by the officers is forbidden ... In sum, whenever constitutional rights are in issue, the ultimate bright line in the interrogation room is honesty and common sense.
Id. at 526.
The subsequent opinion in State v. Glatzmayer, 789 So.2d 297 (Fla.2001) does not support the majority’s conclusion that “Detective Capote’s question in effect correctly informed Chaney that it was up to Chaney to decide whether or not he needed a lawyer .” If the detective had said that, I agree that under Glatzmayer, affir-mance is in order. Glatzmayer was told, in answer to the same question- as Chaney: “that’s not our decision to make, that yours [sic], it’s up to you.” ' The majority interprets Detective Capote’s “Do you think you need a lawyer?” as the same thing as telling Chaney that it was his decision.
Evidently, Chaney was debating whether or not to make a statement to the detectives and his question may have been asked in an effort to ascertain not only his rights under the constitution, but whether the detectives thought he had acted in self-defense. The detectives had no obligation to disclose their thinking, but by responding to the question with a question, the officers were not being responsive. The question could be interpreted as, “Do you think you acted in self-defense?” Detec *954 tive Capote did not make a good-faith effort to give a simple and straightforward answer. Admittedly, the detective’s question could be interpreted as suggesting that it was Chaney’s decision, but it could also mean that if Chaney had acted in self-defense, he would not need a lawyer. In footnote 16, Glatzmayer surveyed the law in other jurisdictions.[1] None of them approve the tactic condoned here of responding to the question with a question.
I would reverse the admission of Chaney’s first statement.

. The footnote reads:
See, e.g., Diaz v. Senkowski, 76 F.3d 61, 63 (2d Cir.1996) (admitting the defendant's confession where he asked during interrogation, "Do you think I need a lawyer?” and the officer responded, "You have been advised of your rights.”); United States v. Ogbuehi, 18 F.3d 807, 813 (9th Cir.1994) (admitting the defendant’s confession where he asked during interrogation, "Do I need a lawyer?” and the officer responded, "that was a question that only he could answer”); People v. Oaks, 169 Ill.2d 409, 215 Ill.Dec. 188, 662 N.E.2d 1328, 1347 (1996) (admitting the confession where the defendant asked, "Should I see a lawyer?” and the officer responded, "That's up to you.”); State v. Bailey, 256 Kan. 872, 889 P.2d 738, 743 (1995) (admitting the confession where the defendant asked "if he needed a lawyer” and the officers responded, "that was not a decision for us to make, that was his, decision”); State v. Thomas, 711 So.2d 808, 813 (La.Ct.App.1998) (admitting the confession where the defendant asked, "But do I-do I need a lawyer?” and the officers responded, "That's up to you.”); State v. Jones, 914 S.W.2d 852, 860 (Mo.Ct.App.1996) (admitting the confession where the defendant asked, "Do I need an attorney?” and the officer responded, "I’m not an attorney. I'm an investigator.”); State v. Davis, 124 N.C.App. 93, 476 S.E.2d 453, 457 (1996) (admitting the confession where "the defendant asked if he needed a lawyer and was told that it was his decision to make”); State v. Greybull, 579 N.W.2d 161, 162 (N.D.1998) (admitting the confession where the defendant asked, "Do I need a lawyer?” and the officer replied, "that’s up to you”).
Glatzmayer, 789 So.2d at 305.